ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com
PETER A. HUTCHINSON (SBN 225399)
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CHULA VISTA ELECTRIC CO., a California corporation,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>2. **MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLAN**<br><br>[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

**JURISDICTION**

1. This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer in accordance with the terms and conditions of the plans, the collective bargaining agreements to which the employer

354130v2

1

is bound, and applicable statutes to: (a) compel the employer to produce records for an audit in accordance with the plan agreements and collective bargaining agreements (Claim 1); and (b) recover any unpaid monthly employee fringe benefit contributions and related damages found to be due to the plans by the employer (Claim 2).  This Court has jurisdiction pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185).  Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district and the employer's breach took place in this district.

## PARTIES

2. Plaintiff ("ADMINCO") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of, the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "Laborers Trust Funds").  Each of the Laborers Trust Funds is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the Laborers Trust Funds

exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186). ADMINCO and the Laborers Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3. ADMINCO is informed and believes, and on that basis alleges, that defendant Chula Vista Electric Co. ("EMPLOYER"): is a corporation organized and existing under the laws of the State of California and has a principal place of business in the City of Santee, County of San Diego, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

**AGREEMENTS**

4. In or about 2015, the EMPLOYER entered into a collective bargaining agreement with certain labor unions and affiliated entities ("Signatory Unions") known as the *Project Labor Agreement for the Valencia 1 Solar Project* ("Project Labor Agreement") covering work on a construction project known as the *Valencia 1 Project* ("Project"). Local 1184 of the Laborers' International Union of North America and the district council that it is a member of, the Southern California District Council of Laborers, are among the Signatory Unions. Local 1184 of the Laborers' International Union of North America and the Southern California District Council of Laborers are referred to hereinafter collectively as the "Laborers Union."

5. The Project Labor Agreement incorporates by reference, and includes, the collective bargaining agreements of the Signatory Unions (collectively "Master Agreement"), including the collective bargaining agreements of the Laborers Union ("Laborers Master Agreements"). The Laborers Master Agreements include one known as the Southern California Master Labor Agreement. The Laborers Master

Agreements incorporate by reference the trust agreements of the Laborers Trust Funds ("Laborers Trust Agreements").  When referenced collectively hereinafter, the Project Labor Agreement, including the Laborers Master Agreements, and the Laborers Trust Agreements are referred to as "the Agreements."

6. The Agreements require employers, including the EMPLOYER, to remit fringe benefit contributions to the Laborers Trust Funds on monthly basis ("Monthly Contributions") on behalf of their employees for certain categories of work performed, and for payments to employees performing such work ("Laborers Covered Work").

7. The Agreements require employers, including the EMPLOYER, to submit to the Laborers Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Laborers Covered Work, their Social Security numbers, the hours of work performed by (or paid to) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Laborers Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Laborers Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

8. The Agreements require employers, including the EMPLOYER, to pay interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Laborers Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also require employers, including the EMPLOYER, to pay liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Laborers Trust Fund separately, in the amount of twenty

percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition, employers are required to pay fees for the submission of checks not honored by the banks upon which they are drawn.

9.     The failure of employers to pay Monthly Contributions when due causes damages to the Laborers Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify.  Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer.  The liquidated damages provision of the Agreements was meant to compensate for the loss to the Laborers Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid.  It is based on the Laborers Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Laborers Trust Funds' trustees.

10.    Under the terms of the Agreements, employers, including the EMPLOYER, must require subcontractors who will perform work on the Project to execute an agreement to be bound to the terms of the Project Labor Agreement, and must provide the agreement to be bound to the Laborers Union where the subcontractor will perform Laborers Covered Work.  If an employer fails to obtain, and provide the Laborers Union with, such an agreement from a subcontractor that performs Laborers Covered Work on the Project, the employer becomes liable to the

Laborers Trust Funds for the Monthly Contributions due (or an amount equal to the Monthly Contributions that would have been due) to the Laborers Trust Funds for the subcontractor's work (plus interest, liquidated damages and audit fees thereon), as well as for any such amounts due (or that would have been due) for work by lower-tier subcontractors.

11. Under the terms of the Agreements, employers, including the EMPLOYER, agree not to subcontract Laborers Covered Work to entities that are delinquent to the Laborers Trust Funds. If an employer subcontracts Laborers Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Laborers Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

12. The Agreements require employers, including the EMPLOYER, to produce their payroll and other business records to the Laborers Trust Funds in order for the Laborers Trust Funds to determine whether the employer has reported all hours worked by (or paid to) its employees who perform Laborers Covered Work, and whether the employer has paid the appropriate Monthly Contributions and other amounts due by it to the Laborers Trust Funds. The Agreements also require employers, including the EMPLOYER, to maintain records sufficient for the Laborers Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due. The Agreements further require the employers to pay the Laborers Trust Funds' audit fees if they are delinquent to the Laborers Trust Funds. The Laborers Trust Funds have delegated the authority to perform such audits to ADMINCO.

13. The Agreements require employers to pay the Laborers Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms,

including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## FIRST CLAIM FOR RELIEF
### (For Specific Performance of Obligation to Produce Records for Audit)

14.     ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 13 above as if set forth here.

15.     ADMINCO requested that the EMPLOYER produce its records for audit as required by the terms of the Agreements.  The EMPLOYER has refused to produce its records for audit.  ADMINCO requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the EMPLOYER to comply with its obligation under the Agreements to fully produce its books and records in order for ADMINCO to complete an audit of the EMPLOYER to determine whether amounts are due by it to the Laborers Trust Funds, and, if so, to determine those amounts.

16.     ADMINCO and the TRUST FUNDS were unaware that the EMPLOYER may have performed work on the Project, or any other project, for which Monthly Contributions are due by it to the TRUST FUNDS until being informed by a representative of the Laborers Union in May 2017 that he believed that such work was being performed by the EMPLOYER on the Project. The EMPLOYER had no active account with the TRUST FUNDS at the time that the Laborers Union representative informed the TRUST FUNDS that he believed that the EMPLOYER was performing such work.

17.     Under the terms of the Agreements and sections 502(g)(1) and/or

502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2) (D)), ADMINCO is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**(For Monetary Damages Due to Employee Benefit Plans)**

18. ADMINCO repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 17 above as if set forth here.

19. In and by this second claim for relief, ADMINCO seeks, pursuant to the Agreements and sections 502(g)(2) and 515 of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145), damages in the amounts, if any, determined to be due by the EMPLOYER to the Laborers Trust Funds through the audit sought in and by ADMINCO's first claim for relief or determined by other means, including but not limited to any Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER and lower-tier subcontractors.  ADMINCO will establish such amounts due according to proof at the time of trial or through dispositive motion.  If deemed necessary by the Court, ADMINCO will amend its complaint to add any amounts determined to be due.  Any and all conditions to the EMPLOYER's obligations under the Agreements to pay such amounts due under the Agreements to the Laborers Trust Funds have been met.

20. Under the terms of the Agreements and sections 502(g)(1) and/or 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(1) and/or (g)(2) (D)), ADMINCO is entitled to an award of its attorneys' fees and costs.

**WHEREFORE, ADMINCO prays for judgment as follows:**

ON ADMINCO'S FIRST CLAIM FOR RELIEF

[For Specific Performance of Obligation to Produce Records for Audit]

A. For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the EMPLOYER and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the EMPLOYER's records, to fully cooperate with ADMINCO with respect to the audit in order for ADMINCO to determine whether amounts are due to the Trust Funds, and, if so, the amounts due; and, specifically, to produce to ADMINCO the following payroll and business records – and any other records determined by ADMINCO to be necessary to conduct a full audit – for inspection, examination and copying:

      A.1. All of the EMPLOYER's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the EMPLOYER, its employees, its subcontractors, its lower-tier subcontractors and the employees of the EMPLOYER's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the EMPLOYER, or for the EMPLOYER's subcontractors or lower-tier subcontractors, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

  A.2. All of the EMPLOYER's job files for the Project, including but not limited to all correspondence, agreements and contracts between the EMPLOYER and any contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the EMPLOYER's employees, subcontractors and lower-tier subcontractors, or supervision of the employees of subcontractors and lower-tier subcontractors;

  A.3. All of the EMPLOYER's records related to cash receipts, including but not limited to the EMPLOYER's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices;

  A.4. All of the EMPLOYER's bank statements, including but not limited to those for all checking, savings and investment accounts;

  A.5. All of the EMPLOYER's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

  A.6. All collective bargaining agreements between the EMPLOYER and any trade union, and all records of contributions by the EMPLOYER to any trade union trust fund; and

  A.7. All records related to the formation, licensing, renewal or operation of the EMPLOYER.

  B. For reasonable attorneys' fees and costs of suit, as provided for by the

Agreements and 29 U.S.C. § 1132(g)(1) and/or (g)(2).

C. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

ON ADMINCO'S SECOND CLAIM FOR RELIEF

[For Monetary Damages Due to Employee Benefit Plans]

A. For, according to proof, any amounts determined to be due, including but not limited to any Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the EMPLOYER and lower-tier subcontractors, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

B. For reasonable attorneys' fees and costs of suit, as provided for by the Agreements and 29 U.S.C. § 1132(g)(1) and/or (g)(2).

C. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

DATED: March 14, 2019        REICH, ADELL & CVITAN
                              A Professional Law Corporation

                              By:_____/s/_____
                                    PETER A. HUTCHINSON
                                    Attorneys for Plaintiff